United States District Court
Southern District of Texas
**ENTERED**
August 13, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINDER MORGAN, INC., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-01677 |
| | § | |
| UNITED STEEL, PAPER, AND | § | |
| FORESTRY, RUBBER, | § | |
| MANUFACTURING, ENERGY, | § | |
| ALLIED-INDUSTRIAL AND | § | |
| SERVICE WORKERS | § | |
| INTERNATIONAL UNION, | § | |
| AFL-CIO, CLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Kinder Morgan, Inc. ("Kinder Morgan") brings this lawsuit under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to vacate an arbitration award issued in favor of Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International Union, AFL-CIO, CLC and its Local Union No. 13-227 (collectively, "USW"). USW has filed a counterclaim in this action, seeking to enforce that same arbitration award.

Pending before me are competing motions for summary judgment. Kinder Morgan moves for summary judgment seeking to vacate the arbitration award while USW moves for summary judgment requesting to confirm the arbitration award, along with a request for attorney's fees and costs. *See* Dkts. 28, 29. Having thoroughly reviewed the

submissions and the relevant law, I recommend that Plaintiff's Motion for Summary Judgement (Dkt. 29) be **GRANTED** and USW Defendants' Motion for Summary Judgment (Dkt. 28) be **DENIED**.

## BACKGROUND

Kinder Morgan is one of the largest energy infrastructure companies in North America. USW is a labor organization that has acted as the exclusive collective bargaining representative for certain employees at Kinder Morgan's liquid chemical facilities.

Kinder Morgan and USW are parties to a collective bargaining agreement ("CBA") governing all Kinder Morgan employees—except supervisors, temporary help, contractor employees, and clerical employees—who are working at Kinder Morgan's tank storage terminals located in Pasadena, Texas and Galena Park, Texas. The CBA became effective on February 16, 2017, and runs until February 15, 2022.

The underlying dispute centers on how to properly calculate certain overtime payments under the CBA. The parties recognize that, under a previous collective bargaining agreement, Kinder Morgan had a long-standing practice in which a bargaining unit employee who worked seven consecutive days was paid double time for his work on the seventh consecutive day, regardless of whether a vacation day or a holiday fell within that seven-day span. In August 2016, the parties began negotiating a new collective bargaining agreement. There was much discussion concerning a double time payment provision. Ultimately, the parties agreed on the following CBA language in Section 6.1(c):

**Seventh Consecutive Day Worked.**

Employees shall receive double time on the seventh consecutive day worked in the same two week period.  An employee must work at least one-half day on all seven days to qualify as a "day worked" for this section.

Dkt. 29-7 at 8.  Kinder Morgan contends that this language eliminates the past practice of counting vacations and holidays as "days worked" for double time.  Put another way, Kinder Morgan's position is that an employee receives double pay only if he actually works seven consecutive days.  USW, on the other hand, claims that the past practice of counting vacations and holidays as "days worked" for double time continues with the current CBA language.

Once the CBA went into effect in February 2017, Kinder Morgan refused to count holidays and vacations as "days worked" for calculating whether an employee was entitled to double pay.  USW filed a grievance.  The grievance stated:

THE COMPANY REFUSES TO PAY DOUBLE TIME WHEN AN EMPLOYEE WORKS THE SEVENTH CONSECUTIVE DAY . . . .  THE CBA STATES THAT THESE [HOLIDAYS AND VACATION DAYS] ARE COUNTED AS DAYS WORKED FOR COMPUTING WEEKLY OVERTIME.  THEY CLAIM THIS LANGUAGE IS FOR 1.5 PAY AND NOT 2.0 PAY BECAUSE SECTION 6.1(C) STATES YOU HAVE TO WORK 1/2 A DAY TO QUALIFY FOR 2.0 PAY.  THE UNION STANCE IS AND ALWAYS HAS BEEN THAT SECTION 6.1(C) IS FOR EMPLOYEES WHO ARE CALLED IN FOR AN EMERGANCY [SIC] AND DO NOT WORK AT LEAST A 1/2 DAY OR FOR THOSE WHO COME IN TO WORK AND LEAVE EARLIER THAN 1/2 DAY BY PERSONAL CHOICE . . . .

THE UNION BELIEVES THIS WAS THE ORGINAL [SIC] INTENT OF THE BARGAINED CONTRACT LANGUAGE FROM SEVERAL AGREEMENTS PAST AND THAT THE LANGUAGE IN SEC 6.2(1) and

(2)[1] HAS NOT CHANGED NOR HAS ITS MEANING.  THE UNION ALSO BELIVES [SIC] PAST PAY PRACTICES PROVES THIS WAS THE ORGINAL [SIC] UNDERSTANDING OF THE LANGUAGE OF BOTH SECTIONS 6.1(C) AND 6.2(1) AND (2).

Dkt. 28-1 at 58.  Because the grievance process did not resolve the dispute, USW exercised

its right under the CBA to proceed to arbitration before a single, impartial arbitrator.

The CBA clearly defines the parameters for the arbitrator's authority.  The relevant

portion of the CBA provides as follows:

**Section 9.5.  Authority of the Arbitrator.**

The jurisdiction and authority of the arbitrator shall be confined to the interpretation and/or application of the express provisions of this Agreement. . . .  Past practice may only be used by the arbitrator to interpret a vague or ambiguous provision of this Agreement.  The arbitrator's decision is to be based solely on the evidence and arguments presented by the parties.

Dkt. 29-7 at 13–14.

The case proceeded to arbitration on November 15, 2018 before arbitrator Don B.

Hays.  At the arbitration, three witnesses provided live testimony.  According to all three

witnesses, Judy Archer, Kinder Morgan's Human Resources Director, made an oral

promise during the course of the CBA negotiations that the past practice of counting

vacations and holidays for double time would continue under the new contract.  Kinder

---

[1] Section 6.2, titled "Counted Days," provides as follows:

For the purpose of computing weekly overtime, days shall be counted as days worked when an absence is due to any of the following reasons:

(1) A holiday on which no work is scheduled

(2) Vacation Days

Dkt. 29-7 at 8.

Morgan argued to the arbitrator that the alleged statements were completely irrelevant because the CBA contained a provision expressly stating that "[n]o understandings, undertakings, practices, amendments or modifications of this Agreement shall be valid unless it is agreed to by [Kinder Morgan] and [USW], [and] reduced to writing." *Id.* at 16.

On March 7, 2019, the arbitrator issued his decision, ruling in favor of USW based on the doctrine of equitable estoppel.[2]  In a 31-page arbitration award, the arbitrator found that Kinder Morgan violated the CBA by refusing to comply with the oral representations made by Archer "and to thereafter compensate covered employees at a double time rate of pay for all time worked on a seventh consecutive day, when an earned (paid) holiday or vacation day was taken during such (qualifying) period."  Dkt. 28-1 at 49.  The arbitrator ordered Kinder Morgan to "retroactively calculate and timely pay any earned double time pay losses proven to have been incurred by members of the group grieving this action." *Id.* (emphasis omitted).

Of critical importance to my analysis in determining whether to confirm or vacate the arbitration award, is the following paragraph from near the end of the arbitrator's decision:

---

[2] Although the arbitrator based his award on the legal doctrine of equitable estoppel, the parties recognize that the arbitrator meant to rely on promissory estoppel principles.  The primary difference between promissory estoppel and equitable estoppel is that promissory estoppel is offensive and can be used for affirmative enforcement of a promise in lieu of a breach of contract claim.  By contrast, equitable estoppel is a purely defensive theory, and can be used only for preventing the opposing party from raising a particular claim or defense.  *See Doe v. Roman Catholic Archdiocese of Galveston–Hous. ex rel. Dinardo*, 362 S.W.3d 803, 810 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Kelly v. Rio Grande Computerland Grp.*, 128 S.W.3d 759, 769 (Tex. App.—El Paso 2004, no pet.); *Watson v. Nortex Wholesale Nursery, Inc.*, 830 S.W.2d 747, 751 (Tex. App.—Tyler 1992, no writ).

> We[3] would also note parenthetically that our ruling in this grievance appeal
> turns exclusively on the principle of equitable estoppel.  Therefore, we make
> no findings, nor do we express any opinion on the proper interpretation
> and/or application of any of the related specific CBA's terms and conditions
> of the parties' written agreement, including those argued by the union to be
> clear and dispositive of the issues related to vacation and holiday overtime
> credits, as discussed hereinabove.

*Id.* at 48 (emphasis omitted).  Based on this language in the arbitration award, Kinder

Morgan argues that the arbitrator exceeded his authority by ignoring the express terms of

the CBA and applying the doctrine of equitable estoppel to find in favor of USW.  Kinder

Morgan also claims that the arbitration award violated public policy.  In response, USW

maintains that the arbitrator fully complied with the CBA's provision governing his

authority.  As a result, USW argues that I must uphold the arbitrator's decision that Kinder

Morgan is estopped from denying its oral promise that the past practice of paying

employees double time for the seventh day worked, regardless of whether a vacation or

holiday fell during those seven days, would continue under the CBA.

## LEGAL STANDARD

The law is well settled that judicial review of an arbitral award is extremely limited

and I am required to afford great deference to arbitral awards.  *See Int'l Chem. Workers*

*Union v. Columbian Chems. Co.*, 331 F.3d 491, 494 (5th Cir. 2003).  As the Fifth Circuit

noted earlier this year: "This standard of review has been described as 'extraordinarily

narrow,' and 'severely limited'—one of the most deferential standards 'known to the law.'"

---

[3] For some unexplained reason, the arbitrator used "we" and "our" throughout the arbitration award when referring to himself.  To be clear, there was a single arbitrator—not a panel of arbitrators—who heard and decided this case.

*Commc'ns Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 826 (5th Cir. 2020) (citations omitted).  "Where an arbitration award stems from a labor dispute, judicial review is particularly constrained."  *Id.* (internal quotation marks and citation omitted).

The United States Supreme Court has instructed district courts to affirm an arbitration award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).  I "have no authority to reconsider the merits of the arbitration award, even if the parties argue that the award is based on factual errors or on misinterpretation of the CBA."  *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 824 (5th Cir. 2001).  "As long as the arbitrator's decision 'draws its essence from the collective bargaining agreement' and the arbitrator is not 'fashioning his own brand of industrial justice,' the award cannot be set aside."  *Id.* (quoting *Misco, Inc.*, 484 U.S. at 36).  "An arbitrator dispenses industrial justice by acting contrary to the express provisions of the collective bargaining agreement or otherwise ignoring its plain language."  *Bldg. Materials Mfg. Corp. v. United Steelworkers Int'l Union on behalf of local 00759*, No. 3:18-CV-02606-X, 2020 WL 1047895, at *3 (N.D. Tex. Mar. 3, 2020) (internal quotation marks and citation omitted).  "Where the arbitrator exceeds the express limitations of his contractual mandate, judicial deference ends and vacatur or modification of the award is an appropriate remedy."  *Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 452 (5th Cir. 1997).

## DISCUSSION

Before I dive into my analysis on whether to confirm or vacate the relevant arbitration award, let me make one observation.  Although both parties spend much time in their briefing trying to convince me that the facts, equities, and law support their stance on the double pay issue, it is not my role in this case to opine on the underlying merits of the parties' dispute.  The parties agreed in the CBA that a single arbitrator, not a federal judge, would address the merits of the claim, and I will respect that decision.  *See Manville Forest Prods. Corp. v. United Paperworkers Int'l Union, AFL-CIO*, 831 F.2d 72, 74 (5th Cir. 1987) ("The parties bargained for an arbitrator who would determine facts and interpret the contract; there is no injustice in holding them to this bargain.").  As a result, my job is quite narrow: to determine whether the arbitrator exceeded the express limitations of his contractual mandate as set forth in the CBA.

According to the CBA's plain and unmistakable wording, the arbitrator is bound to the terms of the contract between Kinder Morgan and USW.  *See* Dkt. 29-7 at 13 ("The arbitrator shall not have the authority to add to, subtract from, alter, amend or modify any provision of this Agreement.").  Looking at the CBA, the contours of the arbitrator's jurisdiction are clearly defined: "The jurisdiction and authority of the arbitrator shall be confined to the interpretation and/or application of the express provisions of this Agreement."  *Id.*  Thus, the arbitrator is bound to interpret the negotiated language found in the CBA; he cannot simply reach what he views as an equitable result, manufacturing an award out of whole cloth.  Only when there is a vague or ambiguous provision of the

CBA may the arbitrator use past practices to help shed light on the agreement's meaning. *See id.*

Kinder Morgan first argues that the arbitrator's decision should be disregarded because the arbitrator ignored his contractual authority to only consider "the evidence and arguments presented by the parties." *Id*. at 14.  It is Kinder Morgan's contention that the arbitrator took it upon himself to "recogniz[e] and enforce[]" the principle of equitable estoppel when USW never raised the estoppel issue in the underlying grievance that led to the arbitration, at the arbitration hearing, or in its post-hearing brief.  Dkt. 28-1 at 46.  This argument does not move me.  While USW might not have used the words "equitable estoppel" or "promissory estoppel" in the grievance proceedings, the arbitration hearing, or the post-hearing brief, USW's case unquestionably rested on its claim that Kinder Morgan should be bound by the words and promises of its own negotiator, upon which USW purportedly relied.  At a bare minimum, the arbitrator certainly believed that USW advanced an equitable estoppel claim, stating that "[t]he most supporting and weighty leg of the union's support of this grievance claim appears to rest on [my] recognizing and enforcement of the principle of *equitable estoppel*." *Id.*   Thus, it is my conclusion that the arbitration award should not be set aside on the grounds that USW allegedly failed to raise and argue estoppel principles.  This, of course, begs the question: was it proper for the arbitrator to base his award solely on an estoppel theory of recovery?  It is that issue to which I now turn.

The arbitrator's lengthy opinion makes it crystal clear that he was not trying to interpret or apply the specific provisions of the CBA.  After the parties presented testimony

and documentary evidence at a day-long hearing, the arbitrator found that a Kinder Morgan representative made verbal assurances during contract renewal negotiations that the past practice of counting holidays and vacations as "days worked" for double time would continue under the new agreement. Based on this factual finding, the arbitrator ruled in favor of USW under an equitable theory of recovery, whether you call that doctrine equitable estoppel (as the arbitrator stated) or promissory estoppel (as the parties acknowledge he intended). In the arbitrator's mind, the only way "justice/equity can . . . be achieved" is to hold Kinder Morgan to the promises made by its Human Resources Director at the bargaining table. *Id.* at 49 (emphasis omitted). The problem with this approach is that the arbitrator did not attempt to analyze the CBA's language and determine its appropriate meaning. Instead, the arbitrator reached a result that he believed was fair and just, with no consideration given as to what the CBA actually required. He readily admitted as such: "the [equitable/promissory estoppel] doctrine is not founded on the legal principle of an absolute contractual right; it rests instead on the judicial/arbitral enforcement of fair dealing and morality*." Id.* at 47 (emphasis omitted).

Unsurprisingly, there is a long list of Fifth Circuit cases in which an arbitrator's decision has been vacated because the arbitrator ignored the limits of his contractual authority and fashioned his own brand of industrial justice. *See, e.g., Sw. Airlines Co. v. Local 555, Transp. Workers Union of Am.*, AFL-CIO, 912 F.3d 838, 846–47 (5th Cir. 2019) (holding the arbitrator exceeded his authority where he held that the collective bargaining agreement became effective when signed, ignoring the express terms of the contract which provided that the agreement became effective upon ratification); *Bruce Hardwood*, 103

F.3d at 452 (holding the arbitrator exceeded his authority where he refused to discharge an employee who lied despite the collective bargaining agreement requiring such a penalty); *Hous. Lighting & Power Co. v. Int'l Bhd. of Elec. Workers, Local Union No. 66*, 71 F.3d 179, 184 (5th Cir. 1995) (holding the arbitrator exceeded his authority where he conducted de novo review of an employee's qualifications, even though this was prohibited by the collective bargaining agreement).

What is truly remarkable about this case is that the arbitrator unabashedly admitted that he completely ignored the express limitations on his authority as set forth in the CBA. In explaining his decision, the arbitrator curiously wrote that his ruling "turn[ed] exclusively on the principle of equitable estoppel," and that he made "no findings" and expressed no "opinion on the proper interpretation and/or application of any of the related specific CBA's terms and conditions of the parties' written agreement." Dkt. 28-1 at 48 (emphasis omitted). It is, quite simply, impossible to reconcile the arbitrator's obligation under the CBA to base his decision on "the interpretation and/or application of the express provisions of" the agreement, Dkt. 29-7 at 13, with his admission that his arbitration award did not provide "any opinion on the proper interpretation and/or application of any of the related specific CBA's terms and conditions." Dkt. 28-1 at 48. Had the arbitrator ruled in favor of USW based on his construction and application of the contractual language at issue, I would have been forced to recognize the arbitral award even if I believed the decision to be wrong, boneheaded, or silly. *See E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000) (When an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he

committed serious error does not suffice to overturn his decision." (internal quotation marks and citation omitted)).  But that is not anywhere close to the current situation. Although the CBA expressly prohibited an arbitrator from adding to, amending, or departing from the terms of the CBA, that is exactly what the arbitrator did here, turning a blind eye to the contractual agreement he was required to interpret.[4]  Although I am "not unmindful of the high degree of deference the federal courts generally afford arbitrators, an arbitrator may not ignore the plain language of a collective bargaining agreement." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 406 (5th Cir. 2003) (citation omitted).

I fully agree with Kinder Morgan that when a collective bargaining agreement limits the arbitrator's authority to interpreting and/or applying the agreement and "an arbitrator admits that he made no findings on the proper interpretation of a collective bargaining agreement's terms and conditions, by definition he is disregarding his contractual authority." Dkt. 31 at 4–5.  This seems, to me, a relatively obvious proposition.  "Despite the restricted standard of review that this court must employ of the arbitrator's decision, this court cannot overlook the flagrant violation by the arbitrator of his authority by expanding the precise language of the CBA." *Beaird Indus., Inc. v. Local 2297, Int'l Union*, 404 F.3d 942, 944 (5th Cir. 2005) (quotation marks omitted).  "[T]he rule in this circuit . . . is that arbitral action contrary to express contractual provisions will not be

---

[4] Although the CBA provides that the arbitrator may look at past practices to "interpret a vague or ambiguous provision of" the agreement, the arbitrator here made no finding that the contractual language was vague or ambiguous.  Dkt. 29-7 at 13.

respected." *Hous. Lighting & Power Co.*, 71 F.3d at 182 (internal quotation marks and citation omitted).  *See also Beaird Industries*, 404 F.3d at 946 ("It is well-established that courts may set aside awards when the arbitrator exceeds his contractual mandate by acting contrary to express contractual provisions.").  Because I have concluded that the arbitrator exceeded his contractual authority, I have no choice but to vacate the arbitration award, "thus leaving open the possibility of further [arbitration] proceedings if they are permitted under the terms of the" CBA.  *Misco*, 484 U.S. at 40 n.10.  The arbitrator's award does not draw its essence from the CBA, and permitting it to stand would allow the arbitrator to impose his own brand of industrial justice.

## CONCLUSION

For the reasons stated above, I recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment (Dkt. 29) and **DENY** USW Defendants' Motion for Summary Judgment (Dkt. 28).

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED in Houston, Texas, this 13th day of August, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE